# In the United States Court of Federal Claims

No. 09-506C

(Filed:  July 9, 2010)
_____

| | |
|---|---|
| RICHARD J. REILLY, | * Military pay case; Motion to dismiss for |
| | * lack of jurisdiction or, alternatively, for |
| Plaintiff, | * failure to state a claim – RCFC 12(b)(1) and |
| | * 12(b)(6); Tucker Act – 28 U.S.C. § 1491; |
| v. | * Money-mandating statute; 37 U.S.C. § 204 |
| | * inapplicable; 37 U.S.C. § 206 – reservist |
| THE UNITED STATES, | * not entitled to pay for constructive service |
| | * or for rank to which he was not appointed; |
| Defendant. | * Absent monetary judgment, no jurisdiction |
| | * to provide ancillary equitable relief under |
| | * 28 U.S.C. § 1491(a)(2); 28 U.S.C. § 1631; |
| | * Transfer of nonmonetary claims to district |
| | * court ordered; Interests of justice. |

_____

**ORDER**
_____

*Dale F. Saran*, West Greenwich, RI, for plaintiff.

*John S. Groat*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

**ALLEGRA Judge:**

Richard Reilly (plaintiff) seeks, *inter alia*, restoration of rank, as well as all emoluments and pay to which he is entitled following his involuntary separation from the U.S. Marine Corps (the Corps), for twice failing selection for promotion to Major.  He alleges that he was selected for promotion but that his name was improperly removed from the promotion list.  And he asserts that the Board for Correction of Naval Records (BCNR) improperly failed to correct this error. Defendant has moved to dismiss plaintiff's complaint, claiming, pursuant to RCFC 12(b)(1), that this court lacks jurisdiction, or, alternatively, pursuant to RCFC 12(b)(6), that the complaint fails to state a claim upon which relief can be granted.

I.

A brief recitation of the facts provides necessary context.[1]

In 1993, plaintiff was commissioned as an officer in the Corps.  In 1998, while deployed in Norway, plaintiff became inebriated while on liberty and inappropriately touched a female enlisted Marine while traveling back to base on the liberty bus.  Plaintiff accepted nonjudicial punishment pursuant to 10 U.S.C. § 815, and was found guilty of violating Article 133 of the Uniform Code of Military Justice, 10 U.S.C. § 933, for engaging in conduct unbecoming an officer and a gentleman.  He was issued a letter of reprimand, and forfeited $500.00 of his monthly pay for two months.  On August 19, 1998, a board of inquiry determined that he had demonstrated substandard performance of duty and committed misconduct, but, nevertheless, recommended that he be retained in the Corps.  Further administrative action on this matter was later dropped.

Plaintiff continued to serve on active duty until 2001, when he resigned and accepted a commission with the U.S. Marine Corps Reserve (USMCR).  Plaintiff was first considered for promotion to Major in 2002 by the FY03 Reserve Major's Selection Board.  Indeed, he was selected for promotion by that Board and scheduled to be promoted on October 1, 2002.  That promotion, however, was delayed pending further consideration of the incident described above.

From January 14, 2003, to August 6, 2003, plaintiff was recalled to active duty and deployed to Iraq as part of Operation Enduring Freedom.  While plaintiff was in the midst of this tour, on June 9, 2003, the Commandant of the Marine Corps (the Commandant) submitted a three-page memorandum to the Secretary of the Navy, recommending that plaintiff remain on the FY03 Major USMCR Promotion List (the 2003 promotion list), despite his prior discipline.[2]  It is

---

[1]  These facts are drawn from plaintiff's complaint and, for purposes of this motion, are assumed to be correct.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[2]  The Commandant's memorandum is attached to plaintiff's complaint.  The Commandant based his recommendation, in part, on testimonials received from plaintiff's chain-of-command.  In this regard, the Commandant wrote:

> The officer-in-charge, Detachment 2, Communications Company, Headquarters and Service Battalion, 4th Force Service Support Group, states that Captain Reilly joined the unit approximately 2 years ago and that he has "observed nothing short of excellence from him."  The officer-in-charge further states that Captain Reilly has demonstrated that "he is an officer of the highest caliber," that he would rank Captain Reilly in the "top ten percent of Marine Corps officers" he has served with, and that Captain Reilly was slated to become the officer-in-charge of Detachment 2 before his name was withheld from the promotion list.  The officer-in-charge concludes by stating that he would want Captain Reilly by his side, "leading my unit if we go into combat," and recommends that Captain Reilly be promoted.  The Commanding Officer, Headquarters and Service Battalion, 4th Force Service

somewhat unclear what happened next.  As described in greater detail below, an affidavit supplied by a Marine officer in 2005 averred that the Commandant, after discussing the matter with the Secretary of the Navy, changed his recommendation.  But, there is no communication from the Commandant to that effect in plaintiff's records.  Those records instead show that on February 17, 2004, the Secretary of Navy disapproved the Commandant's promotion recommendation.  Yet, consistent with the view that the Commandant had changed his mind, on May 31, 2004, the Deputy Undersecretary of Defense submitted a memorandum to the President recommending that plaintiff's name be removed from the 2003 promotion list, citing, as support for his decision, the Commandant's loss of confidence in plaintiff's abilities as an officer.  On June 21, 2004, the President approved the Deputy Undersecretary's recommendation.

Plaintiff could not pursue promotion through the FY04 and FY05 Selection Boards while still being considered by the FY03 Board.  Following resolution of his FY03 selection, in 2005, he resubmitted his promotion package, but was rejected by the FY06 Selection Board.  This second nonpromotion decision automatically triggered plaintiff's discharge from the USMCR.

On June 8, 2005, plaintiff petitioned the BCNR to correct the records pertaining to his removal from the FY03 Promotion List and failure to be selected for the FY06 list, requesting that he be returned to the FY03 Promotion List and that his selection failures be rescinded.  He claimed that the President had been misled to believe that the Commandant had recommended that his name be withdrawn from the promotion list, when, in fact, the Commandant had supported his promotion.  In response, Captain Matthew Spurlock, a lawyer in the Judge Advocate General Division of the Corps, submitted an affidavit to the BCNR in which he reported a conversation with Major Pete Gillis, who had worked in the Corps' Office of Promotions during the relevant period.  Captain Spurlock averred that Major Gillis had "personal knowledge" that, after a conversation with the Secretary of the Navy, the Commandant had "changed his mind" and ultimately decided not to support the promotion.  When plaintiff's counsel objected to this affidavit as being "triple" hearsay, Captain Spurlock produced an affidavit by Major Gillis, in which the latter backed up Captain Spurlock's prior claims and, indeed, identified himself as the source of the information contained in the aforementioned May 31, 2004, memorandum from the Deputy Undersecretary referenced above.  Neither affidavit submitted to the BCNR explained how Major

---

Support Group, states that after a "face to face interview, observation of his exceptional leadership skills and technical expertise during a drill weekend, and a thorough review of all his fitness reports and awards," she finds Captain Reilly to be highly qualified for promotion.  The Commanding Officer opines that [the incident with female Marine] is inconsistent with Captain Reilly's behavior and "is considered an anomaly from an otherwise sustained record of excellence and high standard of conduct."  The Deputy Commander, Marine Forces Reserve, forwards the package, recommending approval of promotion.

The recommendation concluded that "[a]lthough Captain Reilly used poor judgment when he decided to drink to excess more than 5 years ago, this single incident was out of character for Captain Reilly and I believe it to be a one-time lapse in judgment."

Gillis had come by "personal knowledge" of the Commandant's conversation with the Secretary of the Navy or why there is no contemporaneous evidence of the Commandant's changed position in plaintiff's records.

Nevertheless, apparently without a hearing on the matter, on October 14, 2005, the BCNR denied plaintiff's application, rejecting his contention that there had been material error or injustice in the recommendation reported to the President.  In so concluding, the BCNR relied squarely on Major Gillis' affidavit.  It declined to find any inaccuracies in the recommendation sent to the President, relying on the "presumption of regularity" that accompanies the acts of government officials.  On November 1, 2005, plaintiff was involuntarily discharged from USMCR, despite having more than seventeen years of service.

On August 3, 2009, plaintiff filed a complaint in this court, invoking, *inter alia*, the Administrative Procedures Act, 5 U.S.C. § 702 *et seq.*, and the Tucker Act, 28 U.S.C. § 1491, and seeking: (i) constructive service from the time he was removed from the promotion list to date; and (ii) back pay, allowances, restoration of date and rank and lineal precedence, and any other emoluments to which he was entitled as a result of his allegedly improper removal from the promotion list, from the date he should have been promoted in 2003 to the present, plus interest.  Plaintiff also asserted that the BCNR abused its discretion in basing its decision upon the "hearsay statements" of an officer.  On October 23, 2009, defendant filed a motion to dismiss the complaint under RCFC 12(b)(1) and 12(b)(6).  That motion has been fully briefed and was argued on February 25, 2010.

II.

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted); *see also Bell Atl. Corp.*, 550 U.S. at 555.  The plaintiff must establish that the court has subject matter jurisdiction over its claims. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Hansen v. United States*, 65 Fed. Cl. 76, 94 (2005).

In addition, to survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the complaint must have sufficient "facial plausibility" to "allow [] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Colida v. Nokia, Inc.*, 347 Fed. Appx. 568, 569-70 (Fed. Cir. 2009).  The plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. at 555; *see also Dobyns v. United States*, 91 Fed. Cl. 412, 422-28 (2010) (examining this pleading standard).  Nevertheless, the Federal Circuit has recently reiterated that "[i]n ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009), *cert. denied*, 2010 WL 1024020 (U.S. June 21, 2010); *see also Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009); *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 68 (2009).

Plaintiff's monetary claims allegedly are rooted in the Tucker Act, 28 U.S.C. § 1491.  That statute affords this court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  "[B]ecause the Tucker Act itself does not create a substantive cause of action," the Federal Circuit has adumbrated, "'in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.'"  *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).  "In the parlance of Tucker Act cases, that [statutory] source must be 'money-mandating.'"  *Fisher*, 402 F.3d at 1172, that is, one that "'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'"  *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983) (quoting *United States v. Testan*, 424 U.S. 372, 400 (1976)).  Alternatively, a statute can be interpreted as money-mandating if it grants the claimant a right to recover damages either "expressly or by implication."  *Mitchell*, 463 U.S. at 217 n.16 (citation omitted); *see also Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 1038 (2009).

A.

Plaintiff asserts that 37 U.S.C. § 204(a)(1), in conjunction with 10 U.S.C. § 1552(c)(1), supplies the requisite pay-mandating statute.[3]  While the former statute undoubtedly serves as a money mandating statute, *see Holley*, 124 F.3d at 1465, it applies to reserve officers, such as plaintiff, only when they are removed while on active duty.  *See Dehne v. United States*, 970 F.2d 890, 894 ((Fed. Cir. 1992); *Sargisson v. United States*, 913 F.2d 918, 920 (Fed. Cir. 1990).  And that did not occur here.  Nothing in 10 U.S.C. § 1552 alters this calculus, for that provision is not money-mandating in its own right, but merely authorizes the Secretary concerned to make payments found to be due as the result of correcting a military record.  *See Martinez v. United States*, 333 F.3d 1295, 1315 n.4 (Fed. Cir. 1993), *cert. denied*, 540 U.S. 1177 (2004); *Dehne*, 970 F.2d at 894 (section 1552 "does not mandate pay at all").  Nor may plaintiff seek pay under 37 U.S.C. § 206(a).[4]  While that section entitles members of the reserves to back pay, it applies, with

---

[3]  37 U.S.C. § 204(a)(1) provides that "a member of the uniform service who is on active duty . . . [is] entitled to the basic pay of the pay grade to which assigned."  10 U.S.C. § 1552(c)(1) states:  "The Secretary . . . may pay . . . a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, . . . if, as a result of correcting a record . . . the amount is found to be due the claimant on account of his . . . service in the Army, Navy, Air Force, Marine Corps, or Coast Guard . . . ."

[4]  In pertinent part, 37 U.S.C. § 206(a) provides that –

Under regulations prescribed by the Secretary concerned, and to the extent provided for by appropriations, a member of the National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay under section

exceptions not herein pertinent, only "for regular periods of instruction, periods of appropriate duty, and for performance of other equivalent duties." *Dehne*, 970 F.3d at 893.  It follows that, under this provision, "a reservist is entitled to active duty pay only for the period that he is actually on active duty." *Barnick v. United States*, 591 F.3d 1372, 1379 (Fed. Cir. 2010); *see also Greene v. United States*, 65 Fed. Cl. 375, 380 (2005).  And this remains true even where the lack of performance was involuntary and improperly imposed.  *See Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir. 1999); *Reeves v. United States*, 49 Fed. Cl. 560, 566 (2001).  Accordingly, plaintiff's complaint, to the extent that he seeks pay for constructive service, fails to state a claim.

The same fate awaits that portion of plaintiff's complaint which seeks, for his actual service, the differential in pay between the rank at which he served and that which he allegedly was improperly denied.  In this regard, the Federal Circuit has held that "[a]s a general matter, a service member is entitled only to the salary of the rank to which he is appointed and in which he serves." *Smith v. Sec'y of the Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004); *see also James v. Caldera*, 159 F.3d 573, 582 (Fed. Cir. 1998).  Accordingly, "in a challenge to a decision not to promote, the Military Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected."  *Smith*, 384 F.3d at 1294; *Law v. United States*, 11 F.3d 1061, 1064 (Fed. Cir. 1993).

The only exception to this rule allows for additional compensation to be pursued under the Military Pay Act where "there is a clear-cut legal entitlement" to the promotion in question, *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979), that is, where the service member "has satisfied all the legal requirements for promotion, but the military has refused to recognize his status."  *Smith*, 384 F.3d at 1294; *see also Dysart v. United States*, 369 F.3d 1303, 1315-16 (Fed. Cir. 2004).  In such cases, a service member is not viewed as asking this court "to order his promotion but to recognize that it had occurred." *Law*, 11 F.3d at 1065; *see also Smith*, 384 F.3d at 1294-95.  While plaintiff asserts otherwise, it is manifest that he enjoyed no clear-cut legal right to promotion to the rank of Major.  Plaintiff seeks, rather, corrections of his records in hopes that the President will be persuaded to restore his name to the promotion list.  Such allegations, however, do not trigger the "clear-cut right" exception to the general rule prohibiting awards of salary for increased rank.  *See Dysart*, 369 F.3d at 1313-15 (officer did not have "clear cut legal

---

204 of this title, is entitled to compensation, at the rate of 1/30 of the basic pay authorized for a member of a uniformed service of a corresponding grade entitled to basic pay –

(1)  for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or holiday;

(2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe . . . .

right" to promotion when his nomination was confirmed by the Senate and a rear admiral position became vacant while his name was at the top of the promotion list).

Plaintiff can point to no other statute or regulation that mandates pay for reserve service never actually performed or a rank never attained. Absent such authority, plaintiff lacks any basis for his Tucker Act claims, which must be dismissed for failure to state a claim. *See Fisher*, 402 F.3d at 1176.

Nor does this court have jurisdiction to correct the errors plaintiff asserts occurred in his first promotion review, modify his service records or set aside his involuntary discharge and order his reinstatement. While this court may address procedural violations alleged to have occurred during the course of promotion and discharge decisions, it may do so, via 28 U.S.C. § 1491(a)(2), only "[t]o provide an entire remedy and complete the relief afforded by the judgment." As the quoted language intimates, this court "has no power 'to grant affirmative non-monetary relief unless it is tied and subordinated to a money judgment.'" *James*, 159 F.3d at 580 (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723, *cert. denied*, 423 U.S. 911 (1975)).[5] In short, as no monetary relief can be awarded here, this court lacks jurisdiction under 28 U.S.C. § 1491(a)(2) to order the various forms of nonmonetary relief requested by plaintiff. *See Smith*, 384 F.3d at 1294-96; *Reeves*, 49 Fed. Cl. at 569. This court also lacks, for that matter, jurisdiction over these claims under the Administrative Procedures Act, 5 U.S.C. § 502, *et seq.*, as jurisdiction over claims relying upon that statute lies solely in the district courts.[6]

## B.

Plaintiff requests that this court transfer his nonmonetary claims to an appropriate district court under 28 U.S.C. § 1631. The latter section provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . .

"The statute requires the transferor court to determine both that it lacks jurisdiction and that the transferee court possesses jurisdiction." *Fisherman's Harvest, Inc. v. PBS & J*, 490 F.3d 1371, 1374 (Fed. Cir. 2007); *see also Rodriguez v. United States*, 862 F.2d 1558, 1559 (Fed. Cir. 1988). If those requirements are met, the court must then determine whether the transfer is "in the interest

---

[5] *See also Eastern Shawnee Tribe of Okla. v. United States*, 582 F.3d 1306, 1308 (Fed. Cir. 2009); *Fisher*, 402 F.3d at 1175; *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993).

[6] *See, e.g., Martinez*, 333 F.3d at 1313 ("[T]he Court of Federal Claims lacks APA jurisdiction . . . ."); *Murphy*, 993 F.2d at 874 ("[T]he Claims Court has no authority to invoke the APA."); *accord Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005) ("Of course, no APA review is available in the Court of Federal Claims.").

of justice." *See Ace Property & Casualty Ins. Co. v. United States*, 60 Fed. Cl. 175, 187 (2004), *aff'd*, 128 Fed. Appx. 308 (Fed. Cir. 2005); *Jackson v. United States*, 10 Cl. Ct. 691, 695 (1986). This section thereby "serves to 'aid litigants who were confused about the proper forum for review.'" *In re McCauley*, 814 F.2d 1350, 1352 (9th Cir. 1987) (quoting *American Beef Packers, Inc. v. I.C.C.*, 711 F.2d 388, 390 (D.C. Cir. 1983)). It often comes into play in cases filed against the United States, where the jurisdictional complexities associated with sovereign immunity and the warp of waiver statutes can bedevil the most seasoned litigators. *See generally*, Gregory C. Sisk, "The Tapestry Unravels:  Statutory Waivers of Sovereign Immunity and Money Claims Against the United States," 71 Geo. Wash. L. Rev. 602 (2003).

The first prong of this statutory analysis begs questions as to the nature of the dismissals here.  Consistent with Federal Circuit precedent, the court's determination that the pled facts in this case do not support a claim under 37 U.S.C. §§ 204 and 206 results not in a dismissal for lack of jurisdiction, but for failure to state a claim – a merits determination.[7]  That ruling, however, begets the conclusion that this court lacks jurisdiction over plaintiff's nonmonetary claims – the court has not decided those claims on the facts alleged, as jurisdiction under section 1491(a)(2) is wholly lacking.  *See Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997); *Michienzi v. United States*, 207 Ct. Cl. 484, 492 (1975); *Austin*, 206 Ct. Cl. at 723.  And, as noted above, there is no doubt that the court's dismissal of plaintiff's "APA" claims is jurisdictional in nature.

The decisional law suggests that in a bifurcated resolution such as this – where some claims are dismissed for failure to state a claim, and others for lack of jurisdiction – the latter may be transferred.  Thus, the Federal Circuit has held that section 1631 "permits the transfer of less than all of the claims of an action," observing, *inter alia*, that it "would indeed be a curious result that a . . . court could transfer an action under § 1631 containing a single claim over which it lacked jurisdiction but could not transfer that claim if the claimant made an additional claim in his action over which the court did have jurisdiction."  *United States v. County of Cook, Illinois*, 170 F.3d 1084, 1088-89 (Fed. Cir. 1999); *see also James*, 159 F.3d at 583-84.  Other cases confirm that when a court has jurisdiction over some, but not all, claims, it may transfer those for which jurisdiction is lacking to another court, assuming the other prerequisites of section 1631 are met.[8]

---

[7]  *See Fisher*, 402 F.3d at 1175-76 ("Assuming that the Court of Federal Claims has taken jurisdiction over the cause, as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequences of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this:  plaintiff loses on the merits for failing to state a claim on which relief can be granted."); *see also Jan's Helicopter Serv.*, 525 F.3d at 1307-08; *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006), *cert. denied*, 549 U.S. 1321 (2007); *Siemietkowski v. United States*, 86 Fed. Cl. 193, 198 (2009).

[8]  *See, e.g.*, *Jacobs v. United States*, 2010 WL 2594320, at *13 (Fed. Cl. June 23, 2010) (considering plaintiff's transfer requests only as to those claims for which jurisdiction was lacking; other claims dismissed for failing to state a claim); *Russell v. United States*, 78 Fed. Cl. 281, 289-90 (2007) (dismissing plaintiff's takings claim for failure to state a claim upon which relief may be granted, but transferring other tax claims over which the court lacked jurisdiction to the district

Based upon these cases, the court holds that the first prong of section 1631 is satisfied here as to plaintiff's nonmonetary claims, at least to the extent they are predicated upon the APA.

Next to be considered is whether a district court would have possessed jurisdiction over plaintiff's nonmonetary claims when this suit was filed – in other words, whether the district court would have had jurisdiction over plaintiff's nonmonetary claims under the APA.  The APA waives the sovereign immunity of the United States only for "[a]n action in a court of the United States seeking relief other than money damages."  5 U.S.C. § 702.  In addition, the APA provides that judicial review of agency action is available only "if there is no other adequate remedy."  5 U.S.C. § 704.  Thus, the twin focus of our inquiry must be on whether the claims to be transferred effectively seek money damages and whether a suit in this court could provide plaintiff with an "adequate remedy."  *See James*, 159 F.3d at 579; *see also Smith*, 384 F.3d at 1292 (citing *Mitchell v. United States*, 930 F.2d 893, 895 (Fed. Cir. 1991)).

Although isolated cases suggest otherwise, *cf. Cobell v. Norton*, 240 F.3d 1081, 1094-95 (D.C. Cir. 2001), *but see Eastern Shawnee Tribe of Okla v. United States*, 582 F.3d 1306, 1308-09 (Fed. Cir. 2009); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 139 n.10 (2004), a litigant cannot properly invoke the APA by framing a claim for money damages as one requesting a form of equitable relief.  *See Consol. Edison Co. v. United States*, 247 F.3d 1378, 1385 (Fed. Cir.) (en banc), *cert. denied*, 534 U.S. 1054 (2001); *see also Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1328 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1146 (2005); *Western Shoshone Nat'l Council v. United States*, 357 F. Supp. 2d 172, 175-76 (D.D.C. 2004), *aff'd*, 279 Fed. Appx. 980 (Fed. Cir. 2008), *cert. denied*, 129 S.Ct. 899 (2009).  Here, however, plaintiff's remaining equitable claims do not presage a present entitlement to a monetary award in any way, let alone one for "damages."  *See James*, 159 F.3d at 580.  Indeed, the discussion above, in emphasizing that a reservist may neither obtain compensation for constructive service nor additional compensation for a rank unobtained, serves to illustrate just how divorced plaintiff's nonmonetary claims under the APA are from anything that would lead to money damages.  *See Millican v. United States*, 2006 WL 5640829, at *11-12 (Fed. Cl. Aug. 24, 2006).  That the record corrections and other ancillary relief he seeks might affect his rank or duty status, and thus lead to his receiving additional pay or enhanced benefits in the future, does not alter this reality.  *See Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 534 (D.C. Cir. 1988) ("a claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff"); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 52 (D.D.C. 2005); *see also Crane v. United States*, 41 Fed. Cl. 338,

---

court); *Taylor v. United States*, 73 Fed. Cl. 532, 547 (2006) (same); *see also Schmidt v. United States*, 89 Fed. Cl. 111, 125 (2009) (several claims dismissed for lack of jurisdiction, one of which was transferred to district court); *Gray v. United States*, 69 Fed. Cl. 95, 102-03 (2005) (same); *McCann v. United States*, 12 Cl. Ct. 286, 289-90 (1987) (transferring case after plaintiff amended its complaint to remove all prayers for monetary recovery).

341 (1998).[9]  Accordingly, plaintiff's nonmonetary claims meet the requirements of 5 U.S.C. § 702.

They also appear to satisfy the "no other adequate remedy" requirement of 5 U.S.C. § 704. The purpose and effect of this provision, of course, is to make clear that the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." Attorney General's Manual on the Administrative Procedure Act § 10(c), p. 101 (1947); *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  Generally speaking, this requirement focuses not on the availability of a remedy to a particular plaintiff in a given case, but rather on the adequacy of a remedy to a category of claimants.  *See Martinez*, 333 F.3d at 1320; *see also Bowen*, 487 U.S. at 927 (Scalia, J., dissenting).  In making the latter determination, it is absolutely clear – at least in this circuit – that this court's general inability to grant equitable relief does not mean that it cannot afford an "adequate remedy" at law.  *See Christopher Village*, 360 F.3d at 1327-28; *Consol. Edison Co.*, 247 F.3d at 1382-84; *see also Martinez*, 333 F.3d at 1320.  That said, whether this case is viewed from plaintiff's individual perspective or, more categorically, from that of any reservist improperly denied a promotion and discharged for that reason, it remains that this court cannot provide any viable remedy to address such claims (let alone an adequate one).  Accordingly, plaintiff's nonmonetary claims appear to meet both prongs of the APA's jurisdictional requirements, leading to the conclusion that they, in fact, are subject to APA review.[10]

It is still necessary, of course, to determine whether a transfer is "in the interest of justice." When considering this issue, the court must weigh "'the equities of dismissing a claim when it could be transferred.'"  *Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d Cir. 2009) (quoting *Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996)).  Because "the term 'interests of justice' is vague," a court is entitled to "a good deal of discretion in reaching its determination."  *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999).  There is little debate that a transfer serves the interests of justice if a new action filed by the litigant would be barred as untimely.  *See Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1375 (Fed. Cir. 2005); *see also* 17 James Wm. Moore, Moore's Federal Practice § 111.52 (3d ed. 2010) (hereinafter "Moore's Federal Practice").  But, even if that is not the case, transfers of actions filed in good faith generally are viewed as minimizing

_____

[9]  This is not to say that a discharged service member may split a military employment claim into monetary and equitable components so as to effectuate separate adjudications.  *See* Gregory Sisk, "The Tapestry Unravels:  Statutory Waivers of Sovereign Immunity and Money Claims Against the United States," 71 Geo. Wash. L. Rev. 602, 651 (2003) (criticizing cases permitting this).

[10]  *See Gillan v. Winter*, 474 F.3d 813, 817 (D.C. Cir. 2007) (reviewing BCNR decision under the APA as a final agency decision); *James*, 159 F.3d at 580 (holding that an equitable record correction claim fell within the APA's waiver of sovereign immunity); *Millican*, 2006 WL 5640829, at *12 (requests for review of decision to remove officer's name from promotion list "are claims which a federal district court would have jurisdiction to review, under the APA"); *see also Blassingame v. Sec'y of the Navy*, 811 F.2d 65, 68 (2d Cir. 1987).

transaction costs and expediting review, thereby furthering the interests of justice. *See Ruiz*, 552 F.3d at 276; *Butler v. United States*, 442 F. Supp. 2d 1311, 1317 (Ct. of Int'l Trade 2006); *see also Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) ("Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962))); 17 Moore's Federal Practice § 111.52.

In the case *sub judice*, relevant considerations militate heavily in favor of a finding that the interests of justice are best served by transferring plaintiff's APA claims. Although plaintiff's claims likely would be timely if filed anew in the district court, *see* 28 U.S.C. § 2401(a) (establishing a six-year statute of limitations for APA review), a transfer undoubtedly would expedite their review. Moreover, every indication is that these claims have been raised in good faith and are not frivolous, prompted by what appear to be *bona fide* concerns regarding the propriety of the procedures that were employed by the Corps in dealing with plaintiff's promotion and by the BCNR's action in resolving inconsistencies in plaintiff's promotion record on the basis of an affidavit filed by a Major claiming, without explanation, to have "personal knowledge" of a conversation between the Commandant and the Secretary of the Navy.[11]

At oral argument, plaintiff requested that any transfer be to the United States District Court for the District of Columbia. The statute governing the selection of venue for APA actions, 28 U.S.C. § 1391(e), indicates that venue in that court is proper and the court will thus accommodate plaintiff's request.

III.

Based on the foregoing, the court **GRANTS**, **in part**, and **DENIES**, **in part**, defendant's motion to dismiss, holding that plaintiff's monetary claims fail to state a claim upon which relief may be granted. The Clerk is hereby ordered to dismiss those portions of plaintiff's complaint. Pursuant to 28 U.S.C. § 1631, the court hereby **TRANSFERS** the remainder of this lawsuit, constituting plaintiff's nonmonetary claims predicated upon the APA, to the United States District Court for the District of Columbia. No costs.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[11]   While defendant argues that the issues springing from these matters are nonjusticiable, those arguments cite Tucker Act precedents arising within this circuit. It would appear best to allow the district court, in the first instance, to consider whatever justiciability arguments arise in the APA context, consistent with D.C. Circuit precedent.

-11-